[No. 48285-8-I.   Division One.   April 22, 2002.]

ORLIN K. KLEVEN, *Appellant*, v. THE CITY OF DES MOINES, *Respondent*.

---

[22] RP (Sept. 13, 2000) at 548.

[23] *See State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984).

*Hollis W. Duncan*, for appellant.

*Gary N. McLean, City Attorney*; and *David N. Bruce* and *Linda J. Merelle* (of *Savitt & Bruce, L.L.P.*), for respondent.

Cox, A.C.J. — At issue are whether Orlin Kleven has standing to sue under the public disclosure act (PDA), whether the City of Des Moines violated the PDA, and whether the award of sanctions and attorney fees against the City for violation of the act was proper.

We hold that a person may sue for relief under the PDA even though that person's counsel makes the actual request for public records. We also hold that the trial court properly denied the additional sanctions that Kleven seeks in this appeal. But the court erroneously determined that the City violated the act, which resulted in the mandatory award of fees and sanctions. Accordingly, we affirm in part and reverse in part.

On October 27, 2000, Hollis Wayne Duncan, the attorney for Kleven, submitted a public records request to the City of

Des Moines (October 27th request). Neither this request nor any communication that followed mentioned Kleven. Duncan asked the City to provide all municipal court records relating to a case commenced there two years earlier. The City responded by letter a few days later, stating that it would provide him with "an appropriate response as soon as possible." Duncan wrote back, asking the City to estimate the time it would take to produce the records. The City then advised that the records would be ready by November 27, 2000. Duncan retrieved the records.

During review of these records, Duncan found that an audiotape of one of the court hearings in that case appeared to be incomplete. On November 30, 2000, he wrote to the City, asking that it provide him with a complete audiotape. Two weeks later, Duncan wrote another letter asking for "a complete, unedited, and audible copy of the tape." The next day, the City replied by letter, stating that it had "completed the retrieval, review and copying of the court proceedings." It also explained that "the copy of the taped proceedings requested was in the same audible condition as was the Court's original tape."

On December 2, 2000, Duncan sent a second public records request to the City. He sought "each Request for Public Records" that the City had received (December 2 request). The City replied a few days later, asking him to clarify his request. Duncan responded by essentially reiterating his original request. On December 11, 2000, the City sent Duncan a second request for clarification. Two days later, Duncan sent the City another letter asking for "all Public Disclosure Requests that have been received by the City of Des Moines." On December 22, 2000, the City sent a third letter asking Duncan to clarify his December 2, 2000 request.

On December 28, 2000, Kleven commenced this action against the City seeking relief under the PDA.[1] He obtained a show cause order returnable on January 26, 2001.

---

[1] The petition alleged that Kleven had filed the October 27th and December 2 public disclosure requests "through his Attorney."

On January 5, 2001, the City wrote to Duncan to document that it had received no response to its requests for clarification of the December 2 request. The letter further stated that the City had received 49 requests for public records excluding those he submitted, and 8 requests from him. The City made all requests available to him.

In late January, the City discovered that it had mislabeled the audiotape Duncan sought. The City advised Duncan and the court of its mistake, and gave Duncan a copy of the mislabeled tape. After a show cause hearing, the trial court determined that the City had violated the PDA by failing to disclose the tape and ordered that it pay a statutory penalty. The court later entered a second order directing the City to pay Kleven's attorney fees and costs, but denying Kleven any further relief.

Kleven appeals both orders, and the City cross-appeals.

## Standing

As a threshold matter, the City argues that Kleven lacks standing under the PDA to bring this action. We hold that Kleven does have standing.

The purpose of the PDA is "nothing less than the preservation of the most central tenets of representative government, namely, the sovereignty of the people and the accountability to the people of public officials and institutions."[2] The act " 'is a strongly worded mandate for broad disclosure of public records.' "[3] We are to construe its provisions liberally to promote complete disclosure of public records.[4] Thus, we must " 'view with caution any interpre-

---

[2] *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (citing RCW 42.17.251).

[3] *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 251 (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)).

[4] RCW 42.17.251; *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 251; *Olsen v. King County*, 106 Wn. App. 616, 623, 24 P.3d 467 (2001) (citing *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993)).

tation of the statute that would frustrate its purpose.' "[5] We review de novo all agency actions taken or challenged under the PDA.[6]

The PDA generally requires that public records "shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available to any person."[7] The act further provides that:

Upon the motion of *any person having been denied an opportunity to inspect or copy* a public record by an agency, the superior court in the county in which the record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records.[8]

The City argues that Kleven lacks standing to sue under the PDA because Duncan, his attorney, made the requests at issue here. Implicit in this argument is the proposition that a person may not seek relief in the courts under the PDA if that person's attorney communicated the request to the agency. The City reads RCW 42.17.340(1) too narrowly, contrary to the stated purpose of the PDA.

■■■ The doctrine of standing requires that a claimant must have a personal stake in the outcome of a case in order to bring suit.[9] The record amply supports Kleven's personal stake here.

The petition commencing this case, which Duncan signed, clearly alleges that Duncan made the requests for records on behalf of Kleven. As an officer of the court, Duncan is subject to CR 11 and other sanctions for making

---

[5] *Bonamy v. City of Seattle*, 92 Wn. App. 403, 408-09, 960 P.2d 447 (1998) (quoting *Am. Civil Liberties Union v. Blaine Sch. Dist. No. 503*, 86 Wn. App. 688, 693, 937 P.2d 1176 (1997)), *review denied*, 137 Wn.2d 1012 (1999).

[6] RCW 42.17.340(3).

[7] RCW 42.17.270.

[8] RCW 42.17.340(1) (emphasis added).

[9] *Gustafson v. Gustafson*, 47 Wn. App. 272, 276, 734 P.2d 949 (1987), *review denied*, 109 Wn.2d 1024 (1988).

false representations to the court. And the City conceded at oral argument before this court that it had no basis to believe that Duncan's representation in this respect was inaccurate or untrue. In short, there is absolutely nothing in the record to show that Kleven did not have a personal stake in seeking relief under the PDA based on his requests for public records made through his attorney.

"We will not read language into a statute that is not there."[10] Accordingly, we will not read into the act a requirement that precludes a client from obtaining public records through counsel. Likewise, we will not read into the act a requirement that counsel must identify the fact of representation or the name of the client when making a request for public records on behalf of a client.

The City misplaces its reliance on federal cases construing provisions in the Freedom of Information Act (FOIA)[11] to support its argument that Kleven lacks standing. Our courts have repeatedly refused to apply FOIA cases when interpreting provisions in the PDA that differ significantly from the parallel provisions in the federal act.[12] Thus, we distinguish those federal cases.

In *McDonnell*, several plaintiffs submitted written requests for information to a government agency under FOIA.[13] The circuit court held that one of the plaintiffs, who had not signed any of the FOIA requests and had not, himself, formally pursued administrative remedies, lacked standing to sue in district court.[14] The court reasoned that "a person whose name does not appear on a request for records has not made a formal request for documents

---

[10] *Hartson P'ship v. Goodwin*, 99 Wn. App. 227, 236, 991 P.2d 1211 (2000) (citing *In re Custody of Smith*, 137 Wn.2d 1, 12, 969 P.2d 21 (1998), *cert. granted sub nom. Troxel v. Granville*, 527 U.S. 1069, 120 S. Ct. 11, 144 L. Ed. 2d 842 (1999)).

[11] 5 U.S.C. § 552 (1970 and Supp. V. 1975)

[12] *See Am. Civil Liberties Union*, 86 Wn. App. 688, at 697, 937 P.2d 1176; *Amren v. City of Kalama*, 131 Wn.2d 25, 35, 929 P.2d 389 (1997); *Servais v. Port of Bellingham*, 127 Wn.2d 820, 835, 904 P.2d 1124 (1995).

[13] *McDonnell v. United States*, 4 F.3d 1227, 1233 (3d Cir. 1993).

[14] *McDonnell*, 4 F.3d at 1236.

within the meaning of the statute."[15] The court concluded that such a person "may not sue in district court when the agency refuses to release requested documents because he has not administratively asserted a right to receive them in the first place."[16]

But the FOIA provisions underlying *McDonnell* differ from the PDA provisions at issue here. Although FOIA mandates that agencies make nonexempt records available "to any person,"[17] it "conditions the agency's duty upon receipt of a request that is made in accordance with published rules."[18] After determining whether it will comply with such a request, the agency " 'shall immediately notify *the person making such request* of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination.' "[19] FOIA thus requires that the agency respond specifically to "the person making the request."

In contrast, the PDA contains no comparable provision. Moreover, FOIA requires that the requestor exhaust all administrative remedies by appealing to the head of agency before commencing an action in federal court.[20] The PDA contains no similar exhaustion requirement. Those differences are significant for purposes of our state statute.

The City's reliance on *Unigard Insurance Co. v. Department of the Treasury*[21] is similarly misplaced. There, the United States District Court for the Southern District of California held that "[a] person whose name does not appear on the request for disclosure lacks standing to sue under FOIA, even if his interest was asserted in the

---

[15] *McDonnell*, 4 F.3d at 1236-37.

[16] *McDonnell*, 4 F.3d at 1237.

[17] 5 U.S.C. § 552(a)(3).

[18] *McDonnell*, 4 F.3d at 1236.

[19] *McDonnell*, 4 F.3d at 1236 (quoting 5 U.S.C. § 552(a)(6)(A)(i)).

[20] 5 U.S.C. § 552(a)(4), (a)(6)(A)(ii).

[21] 997 F. Supp. 1339 (S.D. Cal. 1997).

request."[22] An attorney submitted a request for information on behalf of a client to a government agency under FOIA.[23] The attorney did not indicate in his written request that he represented the client or that he sought the information on the client's behalf.[24] The court concluded that because the client had not made a formal FOIA request, it had "not administratively asserted its right to receive the materials and ha[d] no standing to sue in the district court to obtain them."[25]

As noted above, the applicable FOIA provisions differ from the PDA provisions at issue here. For this reason alone, FOIA does not provide any useful guidance in applying the PDA. Moreover, the *Unigard* court relied on federal regulations that have no parallel counterpart in the PDA. For example, the court noted that the regulations governing FOIA requests to the Department of the Treasury, Bureau of Alcohol, Tobacco & Firearms require that "[t]he request for records shall be made in writing *by the person making the request*."[26] The PDA contains no such comparable limitation. Because *Unigard* and *McDonnell* were decided under significantly different statutory provisions and regulations, they are not helpful.

### Request for all Public Record Requests

Kleven's December 2 request was for "each request for public records" received by the City. He argues that the City did not respond in a reasonable manner, and that the trial court thus erred in denying him additional statutory penalties and fees totaling nearly $300,000. We disagree.

---

[22] *Unigard*, 997 F. Supp. at 1342 (citing *McDonnell*, 4 F.3d at 1236-37).

[23] *Unigard*, 997 F. Supp. at 1340.

[24] *Unigard*, 997 F. Supp. at 1340-41.

[25] *Unigard*, 997 F. Supp. at 1342.

[26] *Unigard*, 997 F. Supp. at 1342 (quoting 31 C.F.R. § 1.5(c)(1)).

■ The PDA requires disclosure only when there has been a request for "identifiable public records."[27] When "acknowledging receipt of a public record request that is unclear, an agency . . . may ask the requestor to clarify what information the requestor is seeking."[28] If a request does not specify identifiable public records, the responding agency is "perfectly justified" in asking for clarification.[29]

On December 2, Kleven made a blanket request for each request for public records that the City had ever received. Over the course of the next few weeks, Duncan and the City exchanged correspondence in which the City sought, among other things, clarification as to whether the requests "includes or excludes [Duncan's] past and present requests for public records." The City also asked whether the request was directed to records of a particular department or for specific dates. The essence of Kleven's response to the City's requests for clarification was a reiteration of the original records request.

■ There is nothing in this record to show that the City's requests for clarification were in bad faith. The City sought clarification, pursuant to specific statutory authority, to a blanket request for documents. The exchanges of correspondence over the next several weeks proved unproductive. The City then made available all that it could find. The trial court correctly concluded there was no violation of the PDA in connection with the December 2 request.

Relying on *Coalition on Government Spying v. King County Department of Public Safety*,[30] Kleven nevertheless argues that the trial court erred in denying his request for attorney fees and penalties under RCW 42.17.340(4). He contends that he was the prevailing party, and is entitled to fees and penalties. But that case is distinguishable.

---

[27] RCW 42.17.270; *Bonamy*, 92 Wn. App. at 410.

[28] RCW 42.17.320.

[29] *Bonamy*, 92 Wn. App. at 410.

[30] 59 Wn. App. 856, 801 P.2d 1009 (1990).

There, the Coalition on Government Spying requested records from the King County Department of Public Safety.[31] The Department refused disclosure, and the Coalition commenced an action under the PDA.[32] After negotiations between the parties, the Department released some of the requested documents "for the purpose of settlement and compromise of this action."[33] The case eventually went to trial on the question of whether the Coalition had prevailed, thereby entitling it to attorney fees, costs and penalties.[34] The trial court held that neither party had prevailed because there was no "order or judgment," and denied the Coalition any award. We reversed, holding that the Coalition had prevailed because its " 'prosecution of the action could reasonably be regarded as necessary to obtain the information,' and . . . 'the existence of the lawsuit had a causative effect on the release of the information.' "[35]

■ Here, there was never any refusal to disclose records. Rather, there were requests for clarification, which ultimately proved unsuccessful. At that point, the City provided all records responsive to the request. Kleven has not shown that this action had a causative effect on the City's release of the public records requests. Thus, he is not the prevailing party under *Coalition*.

## Request for Municipal Court Records

On cross appeal, the City argues that the trial court erred by awarding penalties and fees under the PDA for failing to fully respond to Kleven's October 27th request for certain municipal court records. Because the trial court erred in concluding that the City violated RCW 42.17.290, we reverse the penalty and fee award.

---

[31] *Coalition*, 59 Wn. App. at 858.

[32] *Coalition*, 59 Wn. App. at 858.

[33] *Coalition*, 59 Wn. App. at 859.

[34] *Coalition*, 59 Wn. App. at 860.

[35] *Coalition*, 59 Wn. App. at 863 (quoting *Miller v. United States Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985)).

The trial court concluded that the City had violated the PDA because it had "maintained a tape of a court proceeding in a disorganized manner inconsistent with RCW 42.17.290." The court determined that "the misfiled/mislabeled tape rendered it impossible for the agency to fully respond to a public request for such tape," and ordered the City to pay a statutory penalty of $1,000. It also ordered the City to pay Kleven's reasonable attorney fees.

■■ The City argues that the court erred by awarding penalties and fees because "nothing in RCW 42.17.340 even suggests that its attorneys' fee and penalty provisions were intended as a mechanism to enforce RCW 42.17.290." We find this argument unconvincing. RCW 42.17.340(4) directs an award of penalties and fees to "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time." The City fails to explain why this mandate would not apply where a party prevails against an agency in an action under RCW 42.17.290 for failure to provide access to public records. Under the plain language of RCW 42.17.340, a party is entitled to fees and penalties if that party prevails in an action seeking the right to inspect or copy any public record or the right to receive a response to a public record request. This would also include a party who prevails in such an action under RCW 42.17.290.

The real question is whether the trial court erred in concluding that the City had violated RCW 42.17.290 by mislabelling the audiotape Kleven requested. We hold that there was no violation in this case.

That statute requires agencies to "adopt and enforce reasonable rules and regulations . . . to provide full public access to public records, [and] to protect public records from damage or disorganization."[36] But there is nothing in the record to show that the City had failed to adopt and enforce

---

[36] RCW 42.17.290.

reasonable rules and regulations to protect its records from disorganization and provide full access to public records. The record shows only that a single audiotape containing information responsive to Kleven's request was mislabelled. Upon discovering this mistake, the City promptly produced the mislabelled tape and corrected the previous erroneous representations that it had made to the court. The trial court thus erred by concluding that the City violated RCW 42.17.290 when it mislabeled a single audiotape, and by imposing PDA liability on that basis.[37]

Absent a violation of RCW 42.17.290 there is no basis for awarding penalties or fees. We reverse both awards.[38]

In sum, we affirm the trial court's order denying Kleven any further relief with respect to the City's alleged failure to comply with the PDA when responding to his December 2 request for public records. We reverse the penalty and fee award based on the City's alleged violation of RCW 42.17.290.

### Attorney Fees on Appeal

Kleven requests attorney fees and costs on appeal under the PDA. Because Kleven has not prevailed, we deny his request for attorney fees on appeal.

COLEMAN and ELLINGTON, JJ., concur.

Reconsideration denied June 10, 2002.

---

[37] We are not required to consider in this case whether systemic disorganization of public records violates the PDA.

[38] Kleven does not appeal the trial court's order regarding disclosure of the audiotape, and does not seek any additional penalties in that regard. Nor does he ask that we apply the *Coalition* standard and hold that he is entitled to penalties and fees on the alternate basis that he prevailed against the City in his action to obtain disclosure.